UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:01-CR-31-1-F
No. 7:02-CV-115-F

| | |
|---|---|
| DREW JOSEPH LUTHERAN, )<br>    Movant, )<br>  v. )<br>)<br>UNITED STATES OF AMERICA, )<br>    Respondent. ) | <u>O R D E R</u> |

This matter is before the court on the Government's Motion to Dismiss or for Summary Judgment [DE #18], with regard to movant, Drew Joseph Lutheran's ("Lutheran") Motion to Vacate, Set Aside or Correct [DE #14] his sentence. Lutheran has filed a Response [DE #20] in opposition thereto, and the matter is ripe for disposition.

### FACTUAL BACKGROUND FOR CLAIM

Only one of Lutheran's § 2255 claims remains for consideration; the other was dismissed following this court's preliminary consideration of the motion pursuant to Rule 4, RULES GOVERNING SECTION 2255 PROCEEDINGS. Lutheran alleges that his federal trial counsel, "Mr. A," rendered ineffective assistance because he failed to cause an earlier state conviction to be vacated prior to Lutheran's federal sentencing. That state conviction (for resisting a public official) resulted in a sentence entered on March 10, 1988, of 45 days imprisonment, suspended, and 36 months unsupervised release ("the predicate sentence"). That sentence not only earned Lutheran one point toward his federal criminal history score, but because Lutheran still was serving the probationary portion of the sentence at the time he committed the instant offense, he was assessed another two points. His total of four criminal history points resulted in a criminal history category of III. With a total offense level of 25, Lutheran's Sentencing

Guideline Range was 70 to 87 months. Lutheran was sentenced at the bottom of that range to a term of 70 months imprisonment.

One day before "Mr. G," Lutheran's § 2255 lawyer, filed the instant motion, the lawyer who had represented Lutheran when the predicate sentence was imposed ("Mr. L.") returned to the state sentencing judge and obtained an order on July 23, 2002, *nunc pro tunc* March 10, 1998, setting aside the 36-month unsupervised probation portion of the predicate sentence, and substituting a six-month term of unsupervised probation. Mr. L explains that State Superior Court Judge Kenneth Crow agreed that the 36-month term of unsupervised probation had been unauthorized at the time he imposed it in 1998.

The significance of the *nunc pro tunc* order is that it retroactively corrected the 1998 state sentence to 45 days imprisonment suspended, and *six* (rather than 36) months unsupervised probation. Had this *nunc pro tunc* sentence been the sentence of record when Lutheran's federal Guideline sentence was calculated, not only would that six-month unsupervised probationary term have expired before Lutheran committed the instant offense, but the sentence, as corrected, would not have been counted *at all* in the calculation of Lutheran's criminal history category. His criminal history category would have been I (he had only one prior countable offense for which only one criminal history point was attributable), his guideline range would have been 57 to 71 months, and, Lutheran assumes, his sentence would have been lower than the 70 months he actually received. Lutheran contends that his federal trial counsel rendered ineffective assistance, in violation of his Sixth Amendment rights, by failing to perceive and to correct the predicate state sentence prior to the time of Lutheran's sentencing in the instant case.[1]

---

[1] Lutheran's substantive claim seeking resentencing upon "correction" of the predicate state sentence has been dismissed. Lutheran waived such claims as a term of his plea agreement with the Government.

## PARTIES' POSITIONS

In opposing Lutheran's motion and in support of its Motion to Dismiss or for Summary Judgment, the Government has offered the affidavit of Lutheran's federal trial counsel, Mr. A. Mr. A recalls that Lutheran questioned the two-point addition to his criminal history score because Lutheran told Mr. A that he had not been placed on probation for that conviction. Lutheran told Mr. A he only had been required to pay court costs and a fine. *See* Affidavit of Mr. A appended to Government's Memorandum at ¶ 12. Upon investigation, Mr. A determined that Lutheran had, in fact, received a 36-month unsupervised probationary sentence. He admits, however, that it did not occur to him to question the length of the term of unsupervised probation. Rather, he explored the possibility of having the judgment set aside and the charge dismissed altogether. Mr. A avers that he contacted an attorney in Carteret County (whose name he does not recall) concerning his plan, but came away from the conversation with the "clear impression that Motions for Appropriate Relief in cases like Resisting Arrest were not granted at this late date in Carteret County." Affidavit of Mr. A, appended to Government's Memorandum in Support of Motion to Dismiss [DE #19].[2]

Lutheran responded to the Government's memorandum in part by offering the affidavit of Mr. L, the Carteret County attorney who represented him in the case in which Judge Crow imposed the "illegal" sentence in 1998. Mr. L states that Lutheran contacted him just prior to Lutheran's federal sentencing hearing, questioning the ramifications of the 36-month term of unsupervised probation. Mr. L explains that "I *then* researched North Carolina General

---

[2] Mr. A observes in ¶ 22 of his Affidavit that "N.C.G.S. 15A-1343.2(d) authorizes the court to sentence to longer periods of probation that [sic] those designated in 15A-1343.2(d)(1) and (d)(2), but that the period may not exceed a maximum of 5 years. . . . [A]lthough the original sentence was set aside and Mr. Lutheran was sentenced to a shorter period of probation to benefit himself, no one appears to have asked the sentencing Judge whether or not *in 1998, at the time of sentencing* he felt a longer period of probation was call for" by the facts surrounding the conviction. Affidavit appended to Government's Memorandum DE #19, at ¶ 22 (emphasis added).

3

Case 7:01-cr-00051-F   Document 23   Filed 10/31/05   Page 3 of 11

Statutes §§ 15A-1342, 15A-1343.2, and 15A-1420 and determined that Judge Crow should have only issued unsupervised probation for a period not to exceed twenty-four (24) months." Affidavit of Mr. L, appended to Lutheran's Memorandum in Opposition to Government's Motion [DE #20] at §4 (emphasis added). Mr. L further recalls that he notified Mr. A that "I might need to do a modification of the judgment and sentence in Carteret County," but that Mr. A asked him to wait until he "gave me the go-ahead."

## STANDARD OF REVIEW

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The movant bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ; *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985).

When making the summary judgment determination, the court views facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Anderson*, 477 U.S. at 255. The nonmoving party may carry his burden either by presenting affirmative evidence, or by demonstrating that the non-moving party's evidence is insufficient to establish an element of its claim. *See Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). Once the movant has met his burden, the party with the ultimate burden of proof then must affirmatively demonstrate the existence of a genuine issue of material fact which requires trial. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for it. *See Anderson*, 477 U.S. at 250.

The standard for summary judgment therefore mirrors the standard for judgment as a matter of law under FED. R. CIV. P. 50(a); that is, a trial court must grant a judgment if, under

the governing law, there can be but one reasonable conclusion as to the verdict. *See Anderson*, 477 U.S. at 250. A trial judge faced with a summary judgment motion "must ask himself not whether he thinks the evidence unmistakenly favors one side or the other, but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252. In opposing summary judgment, the non-moving party must "set forth such facts as would be admissible in evidence." FED. R. CIV. P. 56(e). Inadmissible hearsay is not competent in opposing a motion for summary judgment. *See Greensboro Prof. Fire Fighters Ass'n v. Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

An evidentiary hearing generally is required under § 2255 unless it is conclusive from the pleadings, files, and record that a movant is entitled to no relief. *See United States v. Witherspoon*, 231 F.3d 923, 925-26 (4th Cir. 2000). Whether an evidentiary hearing is necessary is best left to the sound discretion of the district court judge. *Id.* at 549. However, where a movant presents a colorable Sixth Amendment claim showing disputed facts involving inconsistencies beyond the record, a hearing is mandatory. *See United States v. Magini*, 973 F.2d 261, 264 (4th Cir. 1992); *United States v. Luessenhop*, 143 Fed. Appx. 528, 530, No. 04-7328 (4th Cir. 2005).

## INEFFECTIVE ASSISTANCE

The Sixth Amendment to the United States Constitution requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence [sic]," U.S. CONST. AMEND. VI, and that such assistance be effective. *Strickland v. Washington*, 466 U.S. 668, 685, 686 (1984). To prevail on a claim that his counsel was ineffective for Sixth Amendment purposes, a movant must show both that counsel's performance was deficient, and that such deficient performance prejudiced the defense. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). These two elements of proof need not be addressed in any particular order, *see Strickland*, 466 U.S. at 697, and a court considering the

issue need not address one element where the defendant has failed to make the necessary showing with respect to the other. *See id.*

With regard to deficient performance of counsel, it has been said that this element requires a showing that counsel's performance fell below an objective standard of reasonableness, was not reasonable under prevailing professional norms, *id.* at 688, and was not sound strategy when evaluated from counsel's perspective at the time of the alleged deficiency and in light of the totality of the circumstances. *Kimmelman v. Morrison,* 477 U.S. 365, 381 (1986). The movant must identify acts or omissions of counsel which are alleged not to be the result of reasonable professional judgment. *See Strickland,* 466 U.S. at 690. The court then will determine whether, in the light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. *Id.*

The standard of review for counsel's performance is highly deferential, *Kimmelman,* 477 U.S. at 381, and the court in its review must be careful not to narrow the wide range of conduct acceptable under the Sixth Amendment so restrictively as to constitutionalize particular standards of professional conduct and thereby intrude upon the state's authority to define and apply professional standards of conduct to those whom it admits to practice in its courts. *See Nix v. Whiteside,* 475 U.S. 157, 165 (1986). Ineffectiveness generally will not be found where the conduct of which the movant complains represents an exercise of his or her attorney's discretion as to tactics or strategy, *United States v. Dyer,* 784 F.2d 812, 817 (7th Cir. 1986), as long as the attorney made a reasoned choice. Strategic decisions made after a thorough review of the law and facts relevant to plausible options are virtually unchallengeable. *See Strickland*, 466 U.S. at 690.

A determination of reasonableness requires a "context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." *Id.* at 688; *accord Roe v. Flores-Ortega,* 528 U.S. 470, 477 (2000).

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (citations and internal quotation marks omitted).

The right to effective assistance of counsel is constitutionally protected, not for its own sake, but because of the impact it has on a defendant's ability to receive a fair trial, *United States v. Cronic*, 466 U.S. 648, 658 (1984), or a fair appeal, *see Penson v. Ohio*, 488 U.S. 75, 88-89 (1988). Absent some impact of counsel's supposedly deficient conduct on the reliability of the trial, the Sixth Amendment guarantee generally not implicated. *See Cronic*, 466 U.S. at 658. Rather, the movant must demonstrate that his attorney's alleged errors "actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693. *See also Smith v. Robbins*, 528 U.S. 259, 286 (2000) (applying actual prejudice requirement where counsel followed all required procedures and was alleged to have missed a particular nonfrivolous argument); *Strickland*, 466 U.S. at 699-700 (rejecting claim, partly because the evidence counsel did not introduce at trial probably would not have altered defendant's sentence).

## ANALYSIS

Here, the gravamen of Lutheran's § 2255 claim is that Mr. A was ineffective for failing to cause his 1998 state sentence to be amended or corrected before Lutheran was sentenced in federal court. First of all, the record is plain that, as between Lutheran and his counsel, the matter of Lutheran's prior conviction did not arise until the two were reviewing Lutheran's presentence report. According to Mr. A:

7

> 12. Mr. Lutheran had a question about his criminal history points and specifically the 1998 conviction for resist, delay and obstruct. He understood the report gave him a two point enhancement for that offense because they said he was on probation for it when he committed the drug offenses. Mr. Lutheran's statement to me was, "that is wrong; I was not on probation for that. All I had to do was pay a fine and court costs." This was the first time that the conviction was discussed, and it was discussed in the context of Mr. Lutheran not ever having been on probation for the offense.

Affidavit appended to Government's Memorandum (DE # 20) at ¶ 12. Therefore, the issue presented to Mr. A by his client was whether Lutheran had been on placed probation *at all* for the resisting arrest conviction. Mr. A, in fact, did investigate the matter and his investigation revealed that, according to the official state record, a 36-month term of unsupervised probation had been imposed and was undischarged at the time the instant offense was committed.

It was not until he filed his § 2255 motion[3] that Lutheran suggested that it was encumbent upon Mr. A, not only to determine whether the official state record indicated Lutheran had been on probation at the time of the instant offense, but also (a) to go beyond the state official record and determine whether that term of probation was, in fact, lawfully entered, and, if not, (b) to institute and to engage in such state litigation as necessary to "correct" the official state record prior to federal sentencing. In hindsight, had Mr. A undertaken to do so, Lutheran *may* have received a lesser federal sentence.

However, the story did not play out that way. Having ascertained that his client was mistaken in his recollection that he was not on probation at the time, Mr. A initiated contact with an attorney in the state district of conviction in an attempt to have the state conviction set aside. Mr. A recollects in his Affidavit that he came away with the impression that "Motions for Appropriate Relief in cases like Resisting Arrest were not granted at this late date in Carteret County." Affidavit of Mr. A appended to Government's Memorandum at ¶¶ 17-18. Rather than

---

[3] Mr. Lutheran waived his right to appeal, and did not appeal his conviction or sentence.

8

pursue what he believed to be a fruitless endeavor, Mr. A turned instead to preparation of a Sentencing Memorandum in an effort to mitigate the effects of his client's past record on his upcoming sentence. Mr. A admits that the *length* of the period of unsupervised release imposed in the state sentence did not raise a red flag in his mind at the time he reviewed the state sentence; he understood that, "because of the unsupervised nature of the probation[,] the length was in the court's discretion up to 5 years." *Id.* at ¶ 19.

The advice Mr. A gave to Mr. Lutheran as they reviewed Lutheran's Presentence Report was correct: "[I]f, by the time of sentencing . . . a prior conviction has not been set aside on direct or collateral review, that conviction is presumptively valid and may be used to enhance the federal sentence." *Daniels v. United States*, 532 U.S. 374, 382 (2001), citing *Custis v. United States*, 511 U.S. 485, 497 (1994). This rule is subject to the sole exception that convictions obtained in violation of the right to counsel may be challenged in federal sentencing proceedings. *Id.* Mr. A not only investigated the prior conviction and satisfied himself that his client *had* still been on unsupervised probation at the time of the instant offense, but also thereafter concluded after consultation with an attorney from the sentencing district that it was unlikely that the prior state conviction would be set aside at "this late date" in light of the nature of the charges and the district of conviction.

Whether that conclusion, in the end, turned out to be true or false is not relevant to the court's inquiry here. Rather, this court must determine whether Mr. A's performance fell below an objective standard of reasonableness, was not reasonable under prevailing professional norms, *Strickland,* 466 U.S. at 687, and was not sound strategy when evaluated from counsel's perspective at the time of the alleged deficiency and in light of the totality of the circumstances, *Kimmelman,* 477 U.S. at 381.

Applying that objective test to Mr. A's conduct as alleged by his former client, Lutheran, the court has no difficulty concluding that no dereliction of duty occurred here. The advice Mr.

9

A gave to his client in the sentencing phase of this case concerning his prior state convictions was correct: the conviction and sentence, in fact, was a matter of the official state record and nothing could be done about it at that point, as the case then stood, within the federal sentencing context. *Custis* and *Daniel* make clear that neither federal sentencing, nor § 2255, proceedings affords a forum in which to attack and correct an allegedly faulty predicate state sentence.

Both these Supreme Court cases recognize, however, that if a federal sentence is enhanced by use of a prior state conviction that later is vacated in the state court, the defendant may later return to federal court for relief. For example, since *Custis*, a majority of circuits have issued opinions approving the re-opening of federal sentences that had been enhanced under the Armed Career Criminal Act by subsequently vacated state sentences. *See United States v. Doe*, 239 F.3d 473, 475 (2d Cir. 2001); *United States v. Snyder*, 235 F.3d 42, 52 (1st Cir. 2000), *cert. denied*, 532 U.S. 1057 (2001) ; *United States v. Walker*, 198 F.3d 811, 814 (11th Cir. 1999); *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999), *cert. denied*, 528 U.S. 1195 (2000); *United States v. Bacon*, 94 F.3d 158, 161 n.3 (4th Cir. 1996); *United States v. Cox*, 83 F.3d 336, 339-40 (10th Cir. 1996); *United States v. Nichols*, 30 F.3d 35, 36 (5th Cir. 1994).

## SUMMARY & CONCLUSION

For the foregoing reasons, therefore, the court finds that Lutheran has failed to demonstrate the existence of a genuine issue of material fact necessitating an evidentiary hearing, and that matters of record herein demonstrate that Lutheran's trial counsel, Mr. A, was not ineffective in failing to cause Lutheran's state sentence to be amended or corrected during these federal proceedings. Because such substantive relief was not available to Lutheran, as explained in *Custis* and *Daniels*, his counsel cannot be found to have rendered constitutionally deficient assistance in failing to pursue such relief. The Government's Motion to Dismiss or for Summary Judgment [DE #18] is ALLOWED as to Lutheran's single remaining

claim, and the relief Lutheran seeks by way of the instant § 2255 motion is DENIED. Any pending motions are DENIED as moot.

This action is DISMISSED, and the Clerk of Court is DIRECTED to close the case. SO ORDERED.

This 26th day of October, 2005.

_____
JAMES C. FOX
Senior United States District Judge